IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

DONALD T. MCGRADY,

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

Civil Action No.:  5:26-cv-1406 (GTS/ML)

## COMPLAINT

Plaintiff DONALD T. MCGRADY, by and through his attorneys, Porter Law Group, as and for his Complaint against Defendant UNITED STATES OF AMERICA ("Defendant" or "Government"), hereby states and alleges as follows:

## NATURE OF THE CASE

1.    This action seeks compensatory damages for the severe personal injuries, conscious pain and suffering, and other damages suffered by Donald T. McGrady ("Plaintiff") caused by the medical malpractice, negligence, and other wrongful conduct of Defendant, either individually and/or by and through its respective employees, agents, and/or representatives, during the period from in or about April, 2018, through in or about August, 2024, inclusive.

2.    The subject malpractice, negligence, and other wrongful conduct by the Government (by and through its employees, agents and/or representatives) was committed at Family Health Network of CNY Inc. – Cortland Family Practice Health Center ("Cortland Family Practice"), a health care center with multiple locations in New York, including 4038 West Road #281, Cortland, New York 13045.

3.      From in or about April, 2018, through in or about August, 2024, inclusive, Cortland Family Practice was, and it still is, a federally-funded health care center pursuant to the Federally Supported Health Center Assistance Act (FSHCAA), 42 U.S.C. § 233(g)-(n).

4.      From in or about April, 2018, through in or about August, 2024, inclusive, Cortland Family Practice received, and it still receives, HRSA Health Center Program grant funding under 42 U.S.C. § 254b, and it has been deemed a Public Health Service employee for purposes of certain liability protections, including FTCA coverage, under 42 U.S.C. § 233(g)-(n).

5.      Accordingly, this action is brought against Defendant, and its employees, agents and/or representatives, pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680, and 2401(b), for all medical malpractice, negligence, and other wrongful conduct by and through its employees, agents and/or representatives.

6.      Plaintiff seeks the full extent of relief available to him under the aforementioned acts and laws including, but not necessarily limited to, damages for Plaintiff's severe personal injuries, his past and future conscious pain and suffering, his past and future medical expenses, and other pecuniary and non-pecuniary damages, along with such other and further relief that this Court may deem just, proper, and equitable.

**PARTIES**

7.      Plaintiff is an individual who resides in the County of Cortland, State of New York, within the Northern District of New York.

8.      Defendant is the federal government and, under the FTCA, is a proper party to this action.

9.      From in or about April, 2018, through in or about August, 2024, inclusive, Defendant owned, managed, controlled and/or provided federal funding to Cortland Family Practice.

10.     From in or about April, 2018, through in or about August, 2024, inclusive, Cortland Family Practice was a facility deemed eligible for FTCA coverage.

11.     From in or about April, 2018, through in or about August, 2024, inclusive, Cortland Family Practice represented that it was, and held itself out to be, a medical facility capable of providing competent, adequate, and proper medical care, including, but not necessarily limited to, primary care in the field of Family Medicine.

12.     John Bradley Stevens, PA ("Mr. Stevens") is an individual and a physician assistant duly licensed to practice as a physician assistant in the State of New York.

13.     When Mr. Stevens rendered medical care, treatment, and advice to Plaintiff, Mr. Stevens had a primary place of business and office facility located at Cortland Family Practice, 4038 West Road #281, Cortland, New York 13045.

14.     Mr. Stevens has been duly and continuously licensed as a physician assistant in New York State from in or about July, 1977, through the present, inclusive.

15.     From in or about July, 1977, through the present, inclusive, Mr. Stevens has held himself out to the general public as being able to render and furnish competent, adequate, and proper medical care, treatment, and advice as a physician assistant, including in the field of Family Medicine.

16.     At various times during the period from in or about April, 2018, through in or about August, 2024, inclusive, Mr. Stevens rendered medical care, treatment, and advice to Plaintiff.

17.     When Mr. Stevens rendered medical care, treatment, and advice to Plaintiff, there was a physician assistant-patient relationship between them.

18.     When Mr. Stevens rendered medical care, treatment, and advice to Plaintiff, Mr. Stevens was employed by Defendant.

19.    When Mr. Stevens rendered medical care, treatment, and advice to Plaintiff, Mr. Stevens did so within the scope of his employment with Defendant.

20.    When Mr. Stevens rendered medical care, treatment, and advice to Plaintiff, Mr. Stevens had a professional contractual relationship with Defendant.

21.    When Mr. Stevens rendered medical care, treatment, and advice to Plaintiff, Mr. Stevens did so within the scope of his professional contractual relationship with Defendant.

22.    When Mr. Stevens rendered medical care, treatment, and advice to Plaintiff, Mr. Stevens was employed by Cortland Family Practice.

23.    When Mr. Stevens rendered medical care, treatment, and advice to Plaintiff, Mr. Stevens did so within the scope of his employment with Cortland Family Practice.

24.    When Mr. Stevens rendered medical care, treatment, and advice to Plaintiff, Mr. Stevens had a professional contractual relationship with Cortland Family Practice.

25.    When Mr. Stevens rendered medical care, treatment, and advice to Plaintiff, Mr. Stevens did so within the scope of his professional contractual relationship with Cortland Family Practice.

26.    Alexander Langley, M.D. ("Dr. Langley") is an individual and a physician duly licensed to practice medicine in the State of New York.

27.    When Dr. Langley rendered medical care, treatment, and advice to Plaintiff, Dr. Langley had a primary place of business and office facility located at Cortland Family Practice, 4038 West Road #281, Cortland, New York 13045.

28.    Dr. Langley has been duly and continuously licensed as a physician in New York State from in or about March, 2017, through the present, inclusive.

29.    From in or about June, 2017, through the present, inclusive, Dr. Langley has been continuously board certified in Family Medicine.

30.     When Dr. Langley rendered medical care, treatment, and advice to Plaintiff, Dr. Langley held himself out to the general public as being able to render and furnish competent, adequate, and proper medical care, treatment, and advice, including in the field of Family Medicine.

31.     At various times during the period from in or about June, 2018, through in or about August, 2024, inclusive, Dr. Langley rendered medical care, treatment, and advice to Plaintiff.

32.     When Dr. Langley rendered medical care, treatment, and advice to Plaintiff, there was a physician-patient relationship between them.

33.     When Dr. Langley rendered medical care, treatment, and advice to Plaintiff, Dr. Langley was employed by Defendant.

34.     When Dr. Langley rendered medical care, treatment, and advice to Plaintiff, Dr. Langley did so within the scope of his employment with Defendant.

35.     When Dr. Langley rendered medical care, treatment, and advice to Plaintiff, Dr. Langley had a professional contractual relationship with Defendant.

36.     When Dr. Langley rendered medical care, treatment, and advice to Plaintiff, Dr. Langley did so within the scope of his professional contractual relationship with Defendant.

37.     When Dr. Langley rendered medical care, treatment, and advice to Plaintiff, Dr. Langley was employed by Cortland Family Practice.

38.     When Dr. Langley rendered medical care, treatment, and advice to Plaintiff, Dr. Langley did so within the scope of his employment with Cortland Family Practice.

39.     When Dr. Langley rendered medical care, treatment, and advice to Plaintiff, Dr. Langley had a professional contractual relationship with Cortland Family Practice.

40.     When Dr. Langley rendered medical care, treatment, and advice to Plaintiff, Dr. Langley did so within the scope of his professional contractual relationship with Cortland Family Practice.

41.    Nicole Lynn Gergen Villapiano, M.D. ("Dr. Villapiano") is an individual and a physician duly licensed to practice medicine in the State of New York.

42.    When Dr. Villapiano rendered medical care, treatment, and advice to Plaintiff, Dr. Villapiano had a primary place of business and office facility located at Cortland Family Practice, 4038 West Road #281, Cortland, New York 13045.

43.    Dr. Villapiano has been duly and continuously licensed as a physician in New York State from in or about April, 2017, through the present, inclusive.

44.    From in or about October, 2015, through in or about October, 2025, inclusive, Dr. Villapiano was continuously board certified in Internal Medicine.

45.    When Dr. Villapiano rendered medical care, treatment, and advice to Plaintiff, Dr. Villapiano held herself out to the general public as being able to render and furnish competent, adequate, and proper medical care, treatment, and advice, including in the field of Internal Medicine.

46.    At various times during the period from in or about July, 2019, through in or about August, 2024, inclusive, Dr. Villapiano rendered medical care, treatment, and advice to Plaintiff.

47.    When Dr. Villapiano rendered medical care, treatment, and advice to Plaintiff, there was a physician-patient relationship between them.

48.    When Dr. Villapiano rendered medical care, treatment, and advice to Plaintiff, Dr. Villapiano was employed by Defendant.

49.    When Dr. Villapiano rendered medical care, treatment, and advice to Plaintiff, Dr. Villapiano did so within the scope of her employment with Defendant.

50.    When Dr. Villapiano rendered medical care, treatment, and advice to Plaintiff, Dr. Villapiano had a professional contractual relationship with Defendant.

51.    When Dr. Villapiano rendered medical care, treatment, and advice to Plaintiff, Dr. Villapiano did so within the scope of her professional contractual relationship with Defendant.

52.     When Dr. Villapiano rendered medical care, treatment, and advice to Plaintiff, Dr. Villapiano was employed by Cortland Family Practice.

53.     When Dr. Villapiano rendered medical care, treatment, and advice to Plaintiff, Dr. Villapiano did so within the scope of her employment with Cortland Family Practice.

54.     When Dr. Villapiano rendered medical care, treatment, and advice to Plaintiff, Dr. Villapiano had a professional contractual relationship with Cortland Family Practice.

55.     When Dr. Villapiano rendered medical care, treatment, and advice to Plaintiff, Dr. Villapiano did so within the scope of her professional contractual relationship with Cortland Family Practice.

56.     Douglas Rahner, M.D. ("Dr. Rahner") is an individual and a physician duly licensed to practice medicine in the State of New York.

57.     When Dr. Rahner rendered medical care, treatment, and advice to Plaintiff, Dr. Rahner had a primary place of business and office facility located at Cortland Family Practice, 4038 West Road #281, Cortland, New York 13045.

58.     Dr. Rahner has been duly and continuously licensed as a physician in New York State from in or about June, 1992, through the present, inclusive.

59.     From in or about July, 1993, through in or about December, 2014, inclusive, from in or about April, 2015 through in or about June, 2022, inclusive, and again from in or about July, 2022 through the present, inclusive, Dr. Rahner has been board certified in Family Medicine.

60.     When Dr. Rahner rendered medical care, treatment, and advice to Plaintiff, Dr. Rahner held himself out to the general public as being able to render and furnish competent, adequate, and proper medical care, treatment, and advice, including in the field of Family Medicine.

61.     At various times during the period from in or about October, 2021, through in or about August, 2024, inclusive, Dr. Rahner rendered medical care, treatment, and advice to Plaintiff.

62.     When Dr. Rahner rendered medical care, treatment, and advice to Plaintiff, there was a physician-patient relationship between them.

63.     When Dr. Rahner rendered medical care, treatment, and advice to Plaintiff, Dr. Rahner was employed by Defendant.

64.     When Dr. Rahner rendered medical care, treatment, and advice to Plaintiff, Dr. Rahner did so within the scope of his employment with Defendant.

65.     When Dr. Rahner rendered medical care, treatment, and advice to Plaintiff, Dr. Rahner had a professional contractual relationship with Defendant.

66.     When Dr. Rahner rendered medical care, treatment, and advice to Plaintiff, Dr. Rahner did so within the scope of his professional contractual relationship with Defendant.

67.     When Dr. Rahner rendered medical care, treatment, and advice to Plaintiff, Dr. Rahner was employed by Cortland Family Practice.

68.     When Dr. Rahner rendered medical care, treatment, and advice to Plaintiff, Dr. Rahner did so within the scope of his employment with Cortland Family Practice.

69.     When Dr. Rahner rendered medical care, treatment, and advice to Plaintiff, Dr. Rahner had a professional contractual relationship with Cortland Family Practice.

70.     When Dr. Rahner rendered medical care, treatment, and advice to Plaintiff, Dr. Rahner did so within the scope of his professional contractual relationship with Cortland Family Practice.

## **JURISDICTION AND VENUE**

71.     This Court has original subject matter jurisdiction over Plaintiff's claims against Defendant pursuant to 28 U.S.C. § 1346(b)(1), the FTCA, and applicable laws.

72.     Venue is properly laid in this District pursuant to 28 U.S.C. § 1402(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

73.    Venue is properly laid in this District pursuant to 28 U.S.C. § 1402(b) because Plaintiff resided in this District at the time of the injury complained of herein, and no real property is involved in the action.

74.    On or about September 30, 2025, Plaintiff, by and through his legal counsel, properly presented a duly-executed Standard Form 95 (Claim for Damage, Injury, or Death) to the Department of Health and Human Services ("DHHS"), pursuant to the FTCA (28 U.S.C. §§ 1346, 2401(b), et seq.), in which he asserted tort claims against the Government for the events, incidents, injuries and damages described therein, which are at issue in this matter.  Copies of the Standard Form 95 and Addendum are attached hereto as **Exhibit A** (collectively, the "Claim").

75.    Plaintiff duly and properly presented the Claim to Defendant in a timely manner because it was presented to the proper federal agency within two (2) years of Plaintiff's knowledge of the alleged medical malpractice and wrongful conduct and resulting injury.

76.    By letter dated on or about December 15, 2025, a copy of which is attached hereto and incorporated herein as **Exhibit B**, Defendant, by and through the U.S. Department of Health and Human Services, acknowledged that Defendant had received the Claim on October 2, 2025.

77.    By letter dated on or about April 2, 2026, a copy of which is attached hereto and incorporated herein as **Exhibit C**, Defendant, by and through the U.S. Department of Health and Human Services, denied Plaintiff's Claim.

78.    This action is timely filed because it has been filed within six (6) months after denial of the claim.

## RELEVANT FACTUAL BACKGROUND

79.    At various times during the period from in or about April, 2018, through in or about August, 2024, inclusive, Plaintiff received primary medical care and treatment from medical

providers at Cortland Family Practice, including Mr. Stevens, Dr. Langley, Dr. Villapiano, and Dr. Rahner.

80.     Plaintiff was born on December 7, 1955, and was between the ages of 62 and 68 during the period from in or about April, 2018, through in or about August, 2024, inclusive, at all times within the 50- to 80 year-old age range for which the U.S. Preventive Services Task Force recommends annual low-dose CT lung cancer screening for qualifying current or former smokers.

81.     At the office visit on or about April 3, 2018, Mr. Stevens documented that Plaintiff was a former smoker who had quit smoking in or about June, 2012, but did not calculate or document Plaintiff's pack-year smoking history.

82.     At the office visit on or about June 7, 2018, Dr. Langley documented that Plaintiff had quit smoking in or about 2012, but did not calculate or document Plaintiff's pack-year smoking history.

83.     At the office visit on or about July 30, 2019, Dr. Villapiano documented Plaintiff's smoking status as a former smoker, but did not calculate or document Plaintiff's pack-year smoking history.

84.     At the office visit on or about October 6, 2021, Dr. Rahner documented Plaintiff's smoking status as a former smoker, but did not calculate or document Plaintiff's pack-year smoking history.

85.     Notwithstanding their knowledge that Plaintiff was a former smoker, neither Mr. Stevens, Dr. Langley, Dr. Villapiano, nor Dr. Rahner ever calculated or documented Plaintiff's pack-year smoking history, a calculation necessary to determine whether he met the smoking-history criteria for eligibility for low-dose CT lung cancer screening under the guidelines of the U.S. Preventive Services Task Force.

86.    On or about August 12, 2024, Dr. Ouyang was the first provider at Cortland Family Practice to document Plaintiff's pack-year smoking history, noting a 30 pack-year smoking history with a quit date in or about 2012.

87.    During the period from in or about December, 2013, through in or about August, 2024, inclusive, Plaintiff qualified for lung cancer screening through the use of annual low-dose CT scans as recommended by the U.S. Preventive Services Task Force.

88.    During the period from in or about April, 2018, through in or about August, 2024, inclusive, Mr. Stevens did not order a low-dose CT scan for Plaintiff.

89.    During the period from in or about June, 2018, through in or about August, 2024, inclusive, Dr. Langley did not order a low-dose CT scan for Plaintiff.

90.    During the period from in or about July, 2019, through in or about August, 2024, inclusive, Dr. Villapiano did not order a low-dose CT scan for Plaintiff.

91.    During the period from in or about October, 2021, through in or about August, 2024, inclusive, Dr. Rahner did not order a low-dose CT scan for Plaintiff.

92.    During the period from in or about April, 2018, through in or about August, 2024, inclusive, Mr. Stevens did not document that he ordered a low-dose CT scan for Plaintiff.

93.    During the period from in or about June, 2018, through in or about August, 2024, inclusive, Dr. Langley did not document that he ordered a low-dose CT scan for Plaintiff.

94.    During the period from in or about July, 2019, through in or about August, 2024, inclusive, Dr. Villapiano did not document that she ordered a low-dose CT scan for Plaintiff.

95.    During the period from in or about October, 2021, through in or about August, 2024, inclusive, Dr. Rahner did not document that he ordered a low-dose CT scan for Plaintiff.

96.    During the period from in or about April, 2018, through in or about August, 2024, inclusive, Mr. Stevens did not recommend to Plaintiff that he undergo a low-dose CT scan.

97.    During the period from in or about June, 2018, through in or about August, 2024, inclusive, Dr. Langley did not recommend to Plaintiff that he undergo a low-dose CT scan.

98.    During the period from in or about July, 2019, through in or about August, 2024, inclusive, Dr. Villapiano did not recommend to Plaintiff that he undergo a low-dose CT scan.

99.    During the period from in or about October, 2021, through in or about August, 2024, inclusive, Dr. Rahner did not recommend to Plaintiff that he undergo a low-dose CT scan.

100.    During the period from in or about April, 2018, through in or about August, 2024, inclusive, Mr. Stevens did not document that he recommended to Plaintiff that he undergo a low-dose CT scan.

101.    During the period from in or about June, 2018, through in or about August, 2024, inclusive, Dr. Langley did not document that he recommended to Plaintiff that he undergo a low-dose CT scan.

102.    During the period from in or about July, 2019, through in or about August, 2024, inclusive, Dr. Villapiano did not document that she recommended to Plaintiff that he undergo a low-dose CT scan.

103.    During the period from in or about October, 2021, through in or about August, 2024, inclusive, Dr. Rahner did not document that he recommended to Plaintiff that he undergo a low-dose CT scan.

104.    During the period from in or about April, 2018, through in or about August, 2024, inclusive, Mr. Stevens did not discuss the availability of low-dose CT scans with Plaintiff at any time.

105.    During the period from in or about June, 2018, through in or about August, 2024, inclusive, Dr. Langley did not discuss the availability of low-dose CT scans with Plaintiff at any time.

106.    During the period from in or about July, 2019, through in or about August, 2024, inclusive, Dr. Villapiano did not discuss the availability of low-dose CT scans with Plaintiff at any time.

107.    During the period from in or about October, 2021, through in or about August, 2024, inclusive, Dr. Rahner did not discuss the availability of low-dose CT scans with Plaintiff at any time.

108.    During the period from in or about April, 2018, through in or about August, 2024, inclusive, Mr. Stevens did not document that he discussed the availability of low-dose CT scans with Plaintiff at any time.

109.    During the period from in or about June, 2018, through in or about August, 2024, inclusive, Dr. Langley did not document that he discussed the availability of low-dose CT scans with Plaintiff at any time.

110.    During the period from in or about July, 2019, through in or about August, 2024, inclusive, Dr. Villapiano did not document that she discussed the availability of low-dose CT scans with Plaintiff at any time.

111.    During the period from in or about October, 2021, through in or about August, 2024, inclusive, Dr. Rahner did not document that he discussed the availability of low-dose CT scans with Plaintiff at any time.

112.    Mr. Stevens did not screen Plaintiff for lung cancer during the period from in or about April, 2018, through in or about August, 2024, inclusive.

113.    Dr. Langley did not screen Plaintiff for lung cancer during the period from in or about June, 2018, through in or about August, 2024, inclusive.

114.    Dr. Villapiano did not screen Plaintiff for lung cancer during the period from in or about July, 2019, through in or about August, 2024, inclusive.

115.    Dr. Rahner did not screen Plaintiff for lung cancer during the period from in or about October, 2021, through in or about August, 2024, inclusive.

116.    On or about August 12, 2024, Plaintiff presented to David Tung Ouyang, M.D. ("Dr. Ouyang") at Cortland Family Practice for an annual physical examination ("8/12/24 office visit").

117.    At the 8/12/24 office visit, Plaintiff expressed concern about not undergoing chest imaging for some time, given his history as a former smoker.

118.    At the 8/12/24 office visit, Dr. Ouyang documented Plaintiff as having a 30 pack-year smoking history and as having quit smoking in 2012.

119.    The 8/12/24 office visit was the first time Plaintiff's pack-year smoking history was documented by a medical provider at Cortland Family Practice.

120.    On or about August 12, 2024, Dr. Ouyang ordered a low-dose CT scan.

121.    On or about September 6, 2024, Plaintiff underwent a low-dose CT scan, which revealed a solid left lower lobe pulmonary mass measuring approximately 3.1 x 3.8 x 4.1 cm, suspicious for primary malignancy.

122.    On or about September 27, 2024, Plaintiff underwent further diagnostic evaluation, including a bronchoscopy with endobronchial ultrasound.

123.    On or about October 16, 2024, Plaintiff underwent a PET/CT scan.

124.    On or about November 19, 2024, Plaintiff underwent a CT-guided biopsy which confirmed a diagnosis of non-small cell lung cancer (adenocarcinoma).

125.    As of or about January 28, 2025, Plaintiff's cancer was staged as clinical Stage IIIA and was deemed unresectable.

126.    Plaintiff thereafter underwent concurrent chemotherapy and radiation therapy, completed on or about April 7, 2025, followed by adjuvant immunotherapy, which was ongoing as of the filing of this Complaint.

## FIRST CAUSE OF ACTION

### (Medical Malpractice Causing Severe Injuries and Conscious Pain and Suffering)

127.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 126 of this Complaint as if fully set forth herein.

128.    In rendering medical care, treatment, and advice to Plaintiff, Defendant (by and through its employees, agents and/or representatives, as applicable) owed him a duty and responsibility to exercise reasonable care and diligence.

129.    In rendering medical care, treatment, and advice to Plaintiff, Defendant (by and through its employees, agents and/or representatives, as applicable) owed him a duty and responsibility to adhere to applicable standards of medical care in the community, and to not deviate or depart from good and accepted medical practice.

130.    Defendant (by and through its employees, agents and/or representatives, as applicable) failed to exercise reasonable care and diligence in rendering medical care, treatment, and advice to Plaintiff.

131.    Defendant (by and through its employees, agents and/or representatives, as applicable) failed to adhere to applicable standards of care in the community, and deviated from good and accepted medical practice, in rendering care and treatment to Plaintiff.

132.    As a direct and proximate result of Defendant's negligence, carelessness, recklessness and medical malpractice, Plaintiff has been caused to sustain severe and permanent personal injuries, he has suffered pain, mental anguish, distress, and loss of enjoyment of life, he has a diminished life expectancy, he has been caused to incur medical bills and other pecuniary damages, and he has otherwise been caused to suffer economic and non-economic damages, all to his detriment.

133. Plaintiff hereby seeks a judgment and award of compensatory damages on this cause of action in a fair, reasonable, and substantial amount as may be awarded by the Court, together with such other and further relief as to the Court may seem just and proper.

## SECOND CAUSE OF ACTION

### (Common Law Negligence Causing Severe Injuries and Conscious Pain and Suffering)

134. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 133 of this Complaint as if fully set forth herein.

135. In rendering medical care, treatment, and advice to Plaintiff, Defendant owed him a common law duty and responsibility to use reasonable care and diligence.

136. Defendant failed to exercise reasonable care and diligence in rendering medical care to Plaintiff.

137. Defendant was negligent in rendering medical care, treatment, and advice to Plaintiff.

138. As a direct and proximate result of Defendant's negligent acts and omissions, Plaintiff has been caused to sustain severe and permanent personal injuries, he has suffered pain, mental anguish, distress, and loss of enjoyment of life, he has a diminished life expectancy, he has been caused to incur medical bills and other pecuniary damages, and he has otherwise been caused to suffer economic and non-economic damages, all to his detriment.

139. Plaintiff hereby seeks a judgment and award of compensatory damages on this cause of action in a fair, reasonable, and substantial amount as may be awarded by the Court, together with such other and further relief as to the Court may seem just and proper.

## THIRD CAUSE OF ACTION

### (Failure to Obtain Adequate Informed Consent
### Causing Severe Injuries and Conscious Pain and Suffering)

140. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 139 of this Complaint as if fully set forth herein.

141.    Average qualified members of the medical profession practicing the specialties of Defendant (by and through its employees, agents and/or representatives, where applicable) knew the potential risks, benefits and consequences of, and the alternatives to, Defendant's choice of treatment of Plaintiff.

142.    Defendant (by and through its employees, agents and/or representatives, where applicable) knew or should have known of the potential risks, benefits, and consequences of, and the alternatives to, their choice of care and treatment of Plaintiff.

143.    Defendant (by and through its employees, agents and/or representatives, where applicable) failed to adequately inform and advise Plaintiff of the potential risks, benefits and consequences of, and the alternatives to, their choice of care and treatment.

144.    Defendant (by and through its employees, agents and/or representatives, where applicable) failed to adequately explain to Plaintiff the alternatives that were available to him.

145.    If Defendant (by and through its employees, agents and/or representatives, where applicable) had adequately informed and advised Plaintiff of the potential risks, benefits, and consequences of, and the alternatives to, their choice of care and treatment, neither Plaintiff, nor a reasonable person in his position, would have elected to forego annual low-dose CT screening.

146.    The potential risks, benefits, and consequences of, and the alternatives to, Defendant's choice of care and treatment were material to a decision by Plaintiff and would have been material to any reasonable person in his position, as to whether to follow Defendant's choice of care and treatment.

147.    The medical care, treatment, and advice rendered and afforded by Defendant (by and through its employees, agents and/or representatives, where applicable) to Plaintiff was rendered without first obtaining an adequate informed consent.

148. As a direct and proximate result of Defendant's failure to obtain Plaintiff's informed consent, Plaintiff has been caused to sustain severe and permanent personal injuries, he has suffered pain, mental anguish, distress, and loss of enjoyment of life, he has a diminished life expectancy, he has been caused to incur medical bills and other pecuniary damages, and he has otherwise been caused to suffer economic and non-economic damages, all to his detriment.

149. Plaintiff hereby seeks a judgment and award of compensatory damages on this cause of action in a fair, reasonable, and substantial amount as may be awarded by the Court, together with such other and further relief as to the Court may seem just and proper.

**WHEREFORE**, Plaintiff hereby demands judgment as against Defendant on each cause of action, in a fair, reasonable and substantial amount as may be awarded by the Court, together with such other and further relief as to the Court may seem just and proper, including interest, costs and disbursements of this action to the fullest extent permitted by law.

DATED: July 21, 2026

PORTER LAW GROUP
*Attorneys for Plaintiff*

By: _____
Michael S. Porter, of Counsel (512707)
Mary E. Langan, of Counsel (517442)

Office & Post Office Address
100 Madison Street, 15th Floor
Syracuse, New York 13202-2720
315.477.9900
315.477.9923 (facsimile)

**FAX SERVICE NOT ACCEPTED**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| DONALD T. MCGRADY,<br><br>                                         Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>                                         Defendant. | Civil Action No.: |

## CERTIFICATE OF MERIT

I, **MARY E. LANGAN**, under penalties of perjury, hereby affirm as follows:

1.      I am an attorney duly licensed to practice law in the State of New York, and I am one of the attorneys for Plaintiff in this action.

2.      I have reviewed the facts of the case and have consulted with at least one physician who is licensed to practice in New York State or another State, whom I reasonably believe is knowledgeable in the relevant issues involved in this action.

3.      I have concluded on the basis of such review and consultation that there is a reasonable basis for the commencement of this action.

4.      I affirm under penalties of perjury under the laws of New York and the United States of America, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.

DATED:      July 21, 2026
            Syracuse, New York

_____
MARY E. LANGAN

-19-